Nos. 22-2003, 22-2004, 22-2005, 22-2006, 22-2007,
22-2008, 22-2009, 22-2010, 22-2011

IN THE

# United States Court of Appeals
# for the Third Circuit

---

IN RE: LTL MANAGEMENT LLC,

*Debtor*

---

*OFFICIAL COMMITTEE OF TALC CLAIMANTS,

*Appellant*

*(Amended per Court's Order dated 06/10/2022)

---

On direct appeal from the United States Bankruptcy Court
for the District of New Jersey, No. 21-30589, Adv. Proc. No. 21-3023

---

## MOTION TO STAY THE MANDATE

---

GREGORY M. GORDON
BRAD B. ERENS
DAN B. PRIETO
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201

C. KEVIN MARSHALL
DAVID S. TORBORG
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

NEAL KUMAR KATYAL
SEAN MAROTTA
WILLIAM E. HAVEMANN
JO-ANN TAMILA SAGAR
PATRICK C. VALENCIA
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
neal.katyal@hoganlovells.com

March 22, 2023                    *Counsel for LTL Management LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION .............................................................................................1

ARGUMENT ....................................................................................................3

   I.    LTL's Certiorari Petition Will Present Substantial
        Questions For Supreme Court Review ...................................................3

        A.    LTL's petition for certiorari will present a substantial
              question regarding the standard for good faith ...............................4

        B.    LTL's petition for certiorari will present a substantial
              question regarding the standard of review that an
              appellate court applies to a bankruptcy court's good-
              faith findings ...............................................................................13

  II.    Staying The Mandate Will Avoid Chaos In The
        Bankruptcy Court And Mass-Tort Proceedings If The
        Supreme Court Grants Review And Reverses And Will
        Prevent Irreparable Harm To LTL ...................................................17

CONCLUSION.................................................................................................22

CERTIFICATION OF BAR MEMBERSHIP

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

CASES:

*Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*,
   87 S. Ct. 1 (1966) ................................................................... 2

*Bartenwerfer v. Buckley*,
   142 S. Ct. 2675 (2022) ......................................................... 7

*Bartenwerfer v. Buckley*,
   143 S. Ct. 665 (2023) ...................................................... 7, 11

*Carolin Corp. v. Miller*,
   886 F.2d 693(4th Cir. 1989)............................... 1, 2, 4, 6, 12

*In re 15375 Mem'l Corp. v. BEPCO, L.P.*,
   589 F.3d 605 (3d Cir. 2009)................................................ 4, 13

*In re Aldrich Pump LLC*,
   No. 20-30608, 2021 WL 3729335 (Bankr. W.D.N.C. Aug. 23, 2021) ................ 5

*In re Bartenwerfer*,
   860 F. App'x 544 (9th Cir. 2021) ............................................. 7

*In re Bestwall LLC*,
   605 B.R. 43 (Bankr. W.D.N.C. 2019)................................... 5

*In re Cedar Shore Resort, Inc.*,
   235 F.3d 375 (8th Cir. 2000)........................................... 2, 14

*In re Coughlin*,
   33 F.4th 600 (1st Cir. 2022)............................................... 7

*In re C-TC 9th Ave. P'ship v. Norton Co.*,
   113 F.3d 1304 (2d Cir. 1997).............................................. 4

*In re DBMP LLC*,
   No. 20-30080, 2021 WL 3552350 (Bankr. W.D.N.C. Aug. 11, 2021) ................ 5

*In re Great N. Paper, Inc.*,
   299 B.R. 1 (D. Me. 2003)................................................. 18

**TABLE OF AUTHORITIES—Continued**

Page

*In re Integrated Telecom Express, Inc.*,
  384 F.3d 108 (3d Cir. 2004).................................................................. 11

*In re Integrated Telecom Express, Inc.*,
  No. 04-2411 (3d Cir. Dec. 6, 2004) ................................................. 8, 17

*In re Little Creek Dev. Co.*,
  779 F.2d 1068 (5th Cir. 1986)............................................................. 1, 4

*In re Marsch*,
  36 F.3d 825 (9th Cir. 1994)................................................................ 2, 14

*In re Owens Corning*,
  419 F.3d 195 (3d Cir. 2005).................................................................. 11

*In re Premier Auto. Servs., Inc.*,
  492 F.3d 274 (4th Cir. 2007)........................................... 1, 2, 4, 6, 14

*In re SGL Carbon Corp.*,
  200 F.3d 154 (3d Cir. 1999)............................................................. 1, 10

*In re Village at Lakeridge, LLC*,
  814 F.3d 993 (9th Cir. 2016)................................................................ 16

*In re W.R. Grace & Co.*,
  386 B.R. 17 (Bankr. D. Del. 2008) ...................................................... 21

*Kearney v. Standard Ins. Co.*,
  175 F.3d 1084 (9th Cir. 1999).............................................................. 15

*Lac du Flambeau Band v. Coughlin*,
  143 S. Ct. 645 (2023) ............................................................................. 7

*Laguna Assocs. L.P. v. Aetna Cas. & Sur. Co.*,
  30 F.3d 734 (6th Cir. 1994).................................................................... 5

*Marrama v. Citizens Bank of Mass.*,
  549 U.S. 365 (2007)............................................................................... 13

*Miller v. Fenton*,
  474 U.S. 104 (1985)............................................................................... 14

iii

## TABLE OF AUTHORITIES—Continued

*Nara v. Frank*,
  494 F.3d 1132 (3d Cir. 2007) ........................................ 2, 3, 6, 10, 14, 20

*Phillip Morris USA Inc. v. Scott*,
  561 U.S. 1301 (2010) ........................................................................ 21

*Phoenix Piccadilly, Ltd. v. Life Ins. Co. (In re Phoenix Piccadilly, Ltd.)*,
  849 F.2d 1393 (11th Cir.1988) .......................................................... 4

*Rostker v. Goldberg*,
  448 U.S. 1306 (1980) ........................................................................ 21

*Salve Regina Coll. v. Russell*,
  499 U.S. 225 (1991) .......................................................................... 14

*Toibb v. Radoff*,
  501 U.S. 157 (1991) .......................................................................... 12

*U.S. Bank Nat'l Assn. v. Village at Lakeridge, LLC*,
  137 S. Ct. 1372 (2017) ...................................................................... 16

*U.S. Bank Nat'l Assn. v. Village at Lakeridge, LLC*,
  138 S. Ct. 960 (2018) ........................................................................ 15

*U.S. ex rel. Chandler v. Cook County*,
  282 F.3d 448 (7th Cir. 2002) ............................................................... 7

*United States v. Whiting Pools, Inc.*,
  462 U.S. 198 (1983) .......................................................................... 21

**STATUTES:**

11 U.S.C. § 103(g) ............................................................................. 18

11 U.S.C. § 524(g) ..................................................................... 6, 9, 12

11 U.S.C. § 1112(b) ........................................................................... 10

11 U.S.C. § 1112(b)(1) ....................................................................... 11

11 U.S.C. § 1112(b)(4) ....................................................................... 11

11 U.S.C. § 1129(a)(3) ....................................................................... 13

## TABLE OF AUTHORITIES—Continued

<u>Page</u>

11 U.S.C. § 1325(a)(3) ................................................................. 13

28 U.S.C. § 158(d)(2)(A) .............................................................. 8

**RULES:**

Fed. R. App. P. 41(d) ................................................................... 1

Fed. R. App. P. 41(d)(1) ............................................................... 3

Fed. R. App. P. 41(d)(2) ............................................................... 2

S. Ct. R. 10(a) ............................................................................. 7

S. Ct. R. 10(c) ............................................................................. 7

**OTHER AUTHORITIES:**

Anthony J. Casey & Joshua C. Macey, *In Defense of Chapter 11 for Mass Torts*, 90 U. Chi. L. Rev. ___ (forthcoming 2023) ..................................... 10

James Nani & Alex Wolf, *J&J Bankruptcy Ruling Knocks Money Deal in 'Texas Two-Step'*, Bloomberg Law (Jan. 31, 2023), *available at* https://news.bloomberglaw.com/bankruptcy-law/j-j-bankruptcy-ruling-undercuts-central-move-in-texas-two-step ............................. 9

Samir D. Parikh, *The New Mass Torts Bargain*, 91 Fordham L. Rev. 447 (2022) ....................................................... 9, 10

## MOTION TO STAY THE MANDATE PENDING THE FILING AND DISPOSITION OF A PETITION FOR A WRIT OF CERTIORARI

Debtor LTL Management LLC intends to seek certiorari of the Court's judgment.  To avoid the chaos that would occur if LTL's petition were dismissed by the Bankruptcy Court then reinstated by the Supreme Court, LTL respectfully requests the Court stay the mandate pending LTL's filing of its petition and until the Supreme Court's final disposition.  *See* Fed. R. App. P. 41(d).  Appellants all oppose the motion.

## INTRODUCTION

"Courts have not been unanimous about what constitutes 'good faith' in the Chapter 11 filing context."  *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999).  The Court found that LTL's petition did not meet this standard, Op. 54, but acknowledged that LTL had "[g]ood intentions" and a "sincerely held" belief that bankruptcy was justified, Op. 18, 56.

All of that would have forced a different outcome in the Fourth Circuit where "a lack of good faith" requires both " 'objective futility' and 'subjective bad faith.' "  *In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 279-280 (4th Cir. 2007) (quoting *Carolin Corp. v. Miller*, 886 F.2d 693, 700-701(4th Cir. 1989)); *see also In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) (considering both "financial condition[s]" and "motives").  And while the Court treated good faith as "essentially[]" a question of law reviewed de novo, Op. 33 (citation omitted), its

1

sister circuits review a bankruptcy court's good-faith finding under "the clearly erroneous standard," *Premier Auto. Servs.*, 492 F.3d at 279 (quoting *Carolin Corp.*, 886 F.2d at 702); *accord In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 379 (8th Cir. 2000); *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994).

Because, as the Bankruptcy Court put it, one "cannot help but ponder how a bankruptcy filing, which took place in North Carolina and most likely satisfied the good faith standards under the applicable law in that jurisdiction, suddenly morphs post-petition into a bad faith filing simply because the case travels 400 miles up I-95 to Trenton, New Jersey," A13, there is a very real possibility the Supreme Court will grant certiorari to reverse the panel's decision and provide much-needed clarity regarding the good-faith standard. *See* Fed. R. App. P. 41(d)(2); *see also Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007). The Court obviously believes in the correctness of its decision. But it should nonetheless stay the mandate because the issues here are important, unsettled, and subject to reasonable "debat[e]." *American Mfrs. Mut. Ins. Co. v. American Broad.-Paramount Theatres, Inc.*, 87 S. Ct. 1, 2 (1966) (Harlan, J., in chambers).

Finally, if the mandate issues, and then the Supreme Court reviews and reverses, chaos and confusion will ensue. The Bankruptcy Court will have to pick up where it left off after having dismantled the infrastructure that supported the bankruptcy case. The Bankruptcy Court will dissolve the TCC, who then will not

have the opportunity to respond to LTL's certiorari petition; will approve final fee arrangements; and will discharge the fee examiner and future claims representative, all for naught.  Meanwhile in courts across the country, claimants and LTL will need to move cases forward once more at the risk that they could be stayed again, this time mid-trial.  This bankruptcy is large and affects a lot of people in a lot of ways.  The Court should preserve the status quo until the Supreme Court has its say.

## ARGUMENT

This Court will stay the mandate pending the filing of a petition for a writ of certiorari if the movant "show[s] that the petition would present a substantial question and that there is good cause for a stay."  Fed. R. App. P. 41(d)(1).  This case qualifies.  LTL's petition will present substantial questions regarding the good-faith standard and the standard of review that applies to it, and the potential chaos from the mandate issuing and the Supreme Court then reversing is good cause to hold the mandate until the Supreme Court weighs in.

## I.   LTL's Certiorari Petition Will Present Substantial Questions For Supreme Court Review.

A certiorari petition will present a "substantial question"—and thus warrants a stay of the mandate pending its disposition—if there is "a reasonable probability that the Supreme Court will grant certiorari," and "a reasonable possibility that at least five Justices would vote to reverse this Court's judgment." *Nara*, 494 F.3d at

3

1133.  By both entrenching a longstanding circuit split regarding the content of the good-faith standard, and also creating a split regarding the standard of review applicable to a bankruptcy court's good-faith analysis, the panel's decision tees up two substantial questions for review.  *See* Dkt. 155, *Brief of Washington Legal Foundation as* Amicus Curiae at 1-6 (explaining that "forum-shopping will skyrocket" unless the Supreme Court resolves the panel's split from the Fourth Circuit).

### A. LTL's petition for certiorari will present a substantial question regarding the standard for good faith.

1.  There is an longstanding division of authority over the test for good faith. Some courts consider only whether the debtor has a real chance at rehabilitation. *See, e.g.*, *In re C-TC 9th Ave. P'ship v. Norton Co.*, 113 F.3d 1304 (2d Cir. 1997). Others consider "subjective bad faith" alongside objective futility.  *Premier Auto. Servs.*, 492 F.3d at 279-280 (quoting *Carolin Corp.*, 886 F.2d at 700-701); *see also, e.g.*, *In re Little Creek Dev. Co.*, 779 F.2d at 1072; *Phoenix Piccadilly, Ltd. v. Life Ins. Co. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394-95 (11th Cir.1988).  And still others, like this Court, raise the bar even higher, determining the debtor's bad faith objectively by broadly considering "whether the petition serves a valid bankruptcy purpose" and "whether the petition is filed merely to obtain a tactical litigation advantage."  *In re 15375 Mem'l Corp. v. BEPCO, L.P.*,

589 F.3d 605, 618 (3d Cir. 2009) (citation omitted); *see also Laguna Assocs. L.P.*
*v. Aetna Cas. & Sur. Co.*, 30 F.3d 734, 738 (6th Cir. 1994).

This division of authority was outcome determinative in this case.  The panel
concluded that LTL's petition must be dismissed because "[o]ur precedents show a
debtor who does not suffer from financial distress cannot demonstrate its Chapter
11 petition serves a valid bankruptcy purpose supporting good faith," Op. 35, and,
in the panel's view, "LTL was not in financial distress," Op. 53-54.  Yet this
petition would satisfy the good-faith standard in courts on the other side of the
split—a fact the Bankruptcy Court recognized, A13, and the panel effectively
conceded, *see* Op. 28 n.8.  LTL's bankruptcy petition is not objectively futile and
the panel did not dispute LTL's "sincerely held" belief that bankruptcy was
justified.  Op. 56.  Unsurprisingly, then, bankruptcy courts in the Fourth Circuit
have upheld similar bankruptcies, *see, e.g.*, *In re Bestwall LLC*, 605 B.R. 43, 49
(Bankr. W.D.N.C. 2019), and determined that attempts to obtain dismissal would
be futile because of the Fourth Circuit's standard, *see, e.g.*, *In re DBMP LLC*, No.
20-30080, 2021 WL 3552350, at *4, *23 (Bankr. W.D.N.C. Aug. 11, 2021) (noting
that "dismissal would be difficult to obtain" at an early stage because the "Fourth
Circuit's exacting *Carolin* standard" means such a challenge would "likely fail");
*In re Aldrich Pump LLC*, No. 20-30608, 2021 WL 3729335, at *3, *26 (Bankr.
W.D.N.C. Aug. 23, 2021) (similar).

Contrary to Claimants' suggestions, *Carolin*'s two-prong bad-faith standard is alive and well in the Fourth Circuit. *Compare* TCC Rehearing Opp. 12 (discussing *Premier Auto. Servs.*, 492 F.3d at 280), *with Premier Auto. Servs.*, 492 F.3d at 280-281 (citing, discussing, and applying *Carolin*). The Fourth Circuit in *Premier Automobile Services* noted the debtor's lack of financial difficulty as part of discussing the debtor's subjective bad faith; the Fourth Circuit also observed that the debtor had "no unsecured creditors and few, if any, secured creditors," and reasoned that each of these facts showed that the bankruptcy filing's sole purpose was to forestall an eviction. 492 F.3d at 280. These facts also meant the debtor's petition was objectively futile, as any hope for reorganization was "wholly illusory." *Id.* In those circumstances, lack of financial distress "alone" might lead to dismissal because that evidence "overlaps" with and satisfies both *Carolin* prongs—subjective bad faith *and* objective futility—just as *Carolin* expected could happen. 886 F.2d at 701 ("Evidence of subjective bad faith in filing may tend to prove objective futility, and *vice versa*."). Here, of course, LTL has tens of thousands of unsecured creditors and a realistic path to reorganization under 11 U.S.C. § 524(g). And because of that reality, LTL's petition was not objectively futile. *See* Op. 28 n.8, 56.

2. There is a "reasonable probability that the Supreme Court will grant certiorari" to resolve this division for two independent reasons. *Nara*, 494 F.3d at

6

1133. *First*, as the law stands, a debtor's access to Chapter 11 hinges more on a case's venue than its facts. And the Supreme Court routinely grants review to resolve divisions among the courts of appeals in how to interpret a federal statute. *See* S. Ct. R. 10(a). Indeed, the Court has granted certiorari to resolve circuit splits regarding the Bankruptcy Code in the recent past. *See, e.g.*, *In re Coughlin*, 33 F.4th 600, 608 (1st Cir. 2022), *cert. granted sub nom. Lac du Flambeau Band v. Coughlin*, 143 S. Ct. 645 (2023) (certiorari granted where circuits disagreed on proper application of the Bankruptcy Code); *In re Bartenwerfer*, 860 F. App'x 544 (9th Cir. 2021), *cert. granted sub nom. Bartenwerfer v. Buckley*, 142 S. Ct. 2675 (2022) (same), *aff'd*, 143 S. Ct. 665 (2023). Underscoring the urgency of review, this Court is on the short side of the split. Although the Court may believe that it has reached the correct result, its sister circuits' disagreement indicates that a stay is appropriate.

*Second*, the issues in this case easily qualify as "important." S. Ct. R. 10(c); *see also, e.g.*, *U.S. ex rel. Chandler v. Cook County*, 282 F.3d 448, 450 (7th Cir. 2002) (Ripple, J., in chambers) (granting a stay based on the importance of the issue and the disagreement among other judges, even though the panel was "unanimous" and "[n]o judge . . . requested a vote for rehearing en banc"). This Court has already recognized the importance of this case by first certifying it for direct review and then by calling for a response to LTL's rehearing petition. *See*

Dkt. 12-1 in No. 22-8015; *see also* 28 U.S.C. § 158(d)(2)(A)(i)-(ii) (providing for direct appeal where, among other things, the bankruptcy court's decision "involves a matter of public importance" or "a question of law requiring resolution of conflicting decisions"). *Cf. In re Integrated Telecom Express, Inc.*, No. 04-2411 (3d Cir. Dec. 6, 2004) (granting stay of mandate until filing and disposition of petition for writ of certiorari).

This case will determine whether other companies in LTL's shoes—facing mass-tort liability, "which can entail a seemingly infinite number of present and future claims that could impose enterprise-ending liability"—are allowed to use an "important mechanism" under the Code "to achieve widespread resolution of mass-tort liability in a single forum, preserving the debtor's assets so that creditors (both past and future) may receive equitable recovery and the business debtor may have a hope of achieving the 'fresh start' that bankruptcy promises." Dkt. 111, *Brief for National Association of Manufacturers and Product Liability Advisory Council, Inc. as* Amici Curiae at 5, 26. Although many entities face mass-tort claims and have successfully used the Bankruptcy Code to reach a fair and equitable resolution of mass tort claims, *see* Dkt. 118, *Brief for the Chamber of Commerce and American Tort Reform Association as* Amici Curiae at 5-9, the panel's decision takes that "fresh start" off the table for LTL and creates uncertainty for other entities buckling under the weight of similar suits.

The panel's decision is in particular tension with Congress's policy in 11 U.S.C. § 524(g), its enactment for resolving asbestos mass-tort liability.  That provision addresses the need "to deal equitably with claims and future demands" and to form a trust that "will value, and be in a financial position to pay, present claims and future demands."  11 U.S.C. § 524(g)(2)(B).  The panel's stringent financial-distress requirement neglects the interests of future claimants, the very group that Congress acted to protect.

Commentators and legal scholars have expressed concerns about the panel decision's effects on bankruptcy law.  The panel's groundbreaking decision will produce "increased litigation costs as courts attempt to determine 'financial distress' for each individual case."  James Nani & Alex Wolf, *J&J Bankruptcy Ruling Knocks Money Deal in 'Texas Two-Step'*, Bloomberg Law (Jan. 31, 2023), *available at* https://news.bloomberglaw.com/bankruptcy-law/j-j-bankruptcy-ruling-undercuts-central-move-in-texas-two-step.  Dismissal of LTL's bankruptcy will preclude mass-tort debtors and claimants from using Chapter 11's most powerful tools—including centralization of claims, the automatic stay, bankruptcy jurisdiction's broad reach, claims estimation, extensive disclosure requirements, appointment of a future claims representative with fiduciary duties, and the Chapter 11 plan process—to reach an equitable resolution for present *and future* claimants.  *See* Samir D. Parikh, *The New Mass Torts Bargain*, 91 Fordham L.

Rev. 447, 485-493 (2022).  Claimants must instead turn back to the traditional tort system, where massive collective-action and hold-out problems exist, "encourag[ing] claimants who are worried about available recoveries to race to the courthouse to collect ahead of others."  Anthony J. Casey & Joshua C. Macey, *In Defense of Chapter 11 for Mass Torts*, 90 U. Chi. L. Rev. ___ (forthcoming 2023). This race "can destroy going concern value and lead to the dismemberment of valuable firms."  *Id.*  And these real-word consequences confirm that LTL's forthcoming petition will be a strong candidate for Supreme Court review.

3.  Although LTL need not show that this Court's standard is wrong in order to secure a stay, the standard's shaky textual foundation underscores the need for Supreme Court review.  *See Nara*, 494 F.3d at 1133 (a stay is warranted when there is "a reasonable possibility that at least five Justices would vote to reverse this Court's judgment.").  The good-faith requirement is a judicially created gloss on the Bankruptcy Code that the Supreme Court is likely to view with skepticism. And considering whether a petition has a valid "bankruptcy purpose" or whether a debtor experiences "financial distress" is a further gloss on the already judicially created gloss that is "good faith."  The panel's focus on a financial-distress requirement loses sight of 11 U.S.C. § 1112(b)'s goal of preventing abuse of the bankruptcy process, *SGL Carbon*, 200 F.3d at 161-162, and thereby risks

"miss[ing] the forest for the trees," *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005).

The Supreme Court will start with the text. *See, e.g.*, *Bartenwerfer v. Buckley*, 143 S. Ct. 665, 671 (2023). This Court roots its good-faith doctrine in 11 U.S.C. § 1112(b)(1), which permits a bankruptcy court to dismiss a Chapter 11 petition "for cause." *SGL Carbon*, 200 F.3d at 160. But the words "good faith" do not appear in § 1112(b)(1). "For cause" is illuminated by the factors defining "cause" in that provision, but the enumerated factors that would permit dismissal of a bankruptcy case for cause bear no relationship to the good-faith standard crafted by this Court. *Compare, e.g.*, 11 U.S.C. § 1112(b)(4) (explaining that "the term 'cause' includes," among other things, "diminution of the estate," "failure to maintain appropriate insurance," and "failure timely to pay taxes owed"), *with In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119-121 (3d Cir. 2004) (explaining that the "good faith" inquiry looks at whether the debtor was experiencing "financial distress," "whether the petition serves a valid bankruptcy purpose," and whether the petition seeks "merely to obtain a tactical litigation advantage"). This Court has admitted that the "for cause" standard in § 1112(b)(1) "neither requires nor prohibits imposition of a 'good faith' requirement on Chapter 11 petitions." *SGL Carbon*, 200 F.3d at 160. And Congress prescribed

requirements in 11 U.S.C. § 524(g) for debtors seeking to confirm a plan handling mass-tort liabilities.

The Supreme Court has rejected similar efforts to inject new language into the Bankruptcy Code.  In *Toibb v. Radoff*, 501 U.S. 157, 159-160 (1991), for example, the bankruptcy court had dismissed the individual nonbusiness debtor's petition, reasoning that a debtor not engaged in an ongoing business may not reorganize under Chapter 11.  The Supreme Court canvassed the Code for an ongoing-business requirement in Chapter 11.  Noting that various provisions in the Code created exclusions from eligibility, yet no section required an ongoing business, the Court reached the obvious conclusion that "Congress knew how to restrict recourse to the avenues of bankruptcy relief; it did not place Chapter 11 reorganization beyond the reach of a nonbusiness individual debtor." *Id.* at 161.

The same is true here.  Given the express textual requirements in § 1112 and § 524(g), courts should be reluctant to add further requirements that cause early dismissal.  The Fourth Circuit's standard appropriately "contemplates that it is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation." *Carolin Corp.*, 886 F.2d at 701.  The Supreme Court has similarly expressed reluctance to dismiss for lack of good faith in the Chapter

13 context, noting that limiting such dismissals to "extraordinary cases is particularly appropriate" given that lack of good faith is an express statutory ground for later denying plan confirmation in Chapter 13, *see* 11 U.S.C. § 1325(a)(3), and Chapter 11, *see id.* § 1129(a)(3), both. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 n.11 (2007). Bankruptcy courts "should be more reluctant to dismiss a petition for lack of good faith than to reject a plan for lack of good faith." *Id.* (citation omitted). Even if the Supreme Court does not entirely jettison the good-faith requirement, it is likely to be persuaded that this Court's standard is a bridge too far.

> ### B. LTL's petition for certiorari will present a substantial question regarding the standard of review that an appellate court applies to a bankruptcy court's good-faith findings.

The panel decision also creates a split regarding the standard of review that an appellate court applies in assessing good faith. The panel treated good faith as "essentially[] a conclusion of law" reviewed de novo without any deference to the Bankruptcy Court. Op. 33 (quoting *BEPCO*, 589 F.3d at 616). It "likewise" treated the Bankruptcy Court's finding of financial distress the same, giving it a "fresh look." Op. 33. The panel "[w]eigh[ed] the totality of facts and circumstances" itself, leading it to reject the Bankruptcy Court's conclusion that Old JJCI—rather than LTL—was the proper focus of the financial-distress analysis even though the funding agreement was part of the bankruptcy-driven

restructuring, and the restructuring was a "single integrated transaction" to resolve Old JJCI's talc liabilities.  Op. 43-44.  And the panel "evaluate[d] the financial condition of LTL" for itself, concluding it would "not accept [the bankruptcy court's] projections of future liability."  Op. 45-46.  By contrast, other courts of appeals review a bankruptcy court's good-faith finding under "the clearly erroneous standard."  *Premier Auto. Servs.*, 492 F.3d at 279; *see also In re Brazos Emergency Physicians Ass'n, P.A.*, 471 F. App'x 393, 394 (5th Cir. 2012); *In re Cedar Shore Resort, Inc.*, 235 F.3d at 379;  *In re Trident Assocs. Ltd. P'ship*, 52 F.3d 127, 132 (6th Cir. 1995); *In re Marsch*, 36 F.3d at 828.

Here, again, the Court's analysis is likely wrong and there is a reasonable possibility it will be reversed by the Supreme Court.  *See Nara*, 494 F.3d at 1133.  The instances in which the Supreme Court has "articulated a standard of deference for appellate review of district-court determinations reflect an accommodation of the respective institutional advantages of trial and appellate courts."  *Salve Regina Coll. v. Russell*, 499 U.S. 225, 233 (1991).  "[A] federal appellate court [has the] primary function as an expositor of law," *Miller v. Fenton*, 474 U.S. 104, 114 (1985), and is therefore best-suited to resolve questions that "contribute to the clarity of legal doctrine," *Salve Regina*, 499 U.S. at 233.  But a second (and in many cases, third) round of de novo consideration imposes added costs on judges and litigants alike, and it is ill-suited to occasions when an appellate court's

application of a legal standard to particular facts "will not much clarify legal

principles or provide guidance to other courts resolving other disputes." *U.S. Bank*

*Nat'l Assn. v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 968 (2018).  These "case-

specific factual issues" are better resolved by the bankruptcy court, which "has

both the closest and the deepest understanding of the record." *Id.* at 967-968.  An

appellate court reviewing those factual findings should place "a serious thumb on

the scale for the bankruptcy court." *Id.* at 966.

A "change[]" in "authority on review,"—"from de novo review . . . to

clearly erroneous review"—can be "outcome determinative." *Kearney v. Standard*

*Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999).  It certainly was here.  The panel's

reversal would not have been possible but for the panel's decision to reweigh the

facts to reach a different conclusion than the Bankruptcy Court.  The panel, for

example, faulted the Bankruptcy Court for failing to account for "the possibility of

meaningful settlement."  Op. 49.  But the Bankruptcy Court *did* account for that

possibility.  The court acknowledged that since 2014 "there have been

approximately 6,800 cases which have settled," but explained that this "number is

dwarfed" by the "projected 10,000 new cases to be filed each year going forward,"

A20, and that no "meaningful settlement" discussions had taken place since the

global Imerys settlement discussions fell apart, A24.

15

Similarly, the panel faulted the Bankruptcy Court for failing to account for the likelihood of "successful defense" in litigation.  Op. 49.  But the Bankruptcy Court readily acknowledged that JJCI "ultimately prevailed in most of the talc cases it tried," A26 n.15, while recognizing that even a very low plaintiff success rate could ruin the company, A36.  The panel also suggested that the Bankruptcy Court failed to justify its finding that future litigation costs would be higher than the "$4.5 billion" JJCI had incurred over the previous five years.  Op. 50.  But the Bankruptcy Court again reasonably concluded that recent events—the collapse of the Imerys settlement, the Supreme Court's decision not to review the *Ingham* verdict, and damaging reports by the FDA and its Canadian equivalent—meant that "[n]either the settlements nor verdicts which predated these events" were "dependable guideposts for expectations going forward."  A41.

In sum, after hearing the evidence presented during a five-day trial, the Bankruptcy Court was better situated than the panel to weigh the evidence and make credibility judgments.  Yet the panel applied a de novo standard of review to create a do-over and reach a different conclusion.  As cases like *Premier Automobile Services* underscore, this Court is the only jurisdiction in which this could have happened.  It is reasonable to expect that the Supreme Court will grant certiorari to bring the circuits into alignment.  *Cf., e.g.*, *In re Village at Lakeridge, LLC*, 814 F.3d 993, 997 (9th Cir. 2016), *cert. granted in part sub nom. U.S. Bank*

16

*Nat'l Ass'n v. Village at Lakeridge, LLC*, 137 S. Ct. 1372 (2017) (certiorari granted where circuits disagreed on standard of review applicable to issue in bankruptcy proceedings).

## II.   STAYING THE MANDATE WILL AVOID CHAOS IN THE BANKRUPTCY COURT AND MASS-TORT PROCEEDINGS IF THE SUPREME COURT GRANTS REVIEW AND REVERSES AND WILL PREVENT IRREPARABLE HARM TO LTL.

LTL seeks to maintain the status quo for a short period while it seeks a writ of certiorari.  The stay will be temporary: Certiorari briefing will be completed over the summer, and the Supreme Court would likely rule on the petition no later than the first Monday in October.  Thus, if certiorari is ultimately denied, a stay would last only about six months.  *See, e.g.*, *In re Integrated Telecom Express, Inc.*, No. 04-2411 (3d Cir. Dec. 6, 2004) (this Court granted stay of mandate pending certiorari petition and stay was dissolved six months later after certiorari denied).  If review is granted, however, that further weighs in favor of staying the mandate pending the Supreme Court's final disposition of this case.

Without a stay, LTL and courts across the country will be thrust into chaos.  Moreover, the bankruptcy process will be dismantled, and time, effort, and money expended, all for naught if the Supreme Court ultimately reverses this Court.  The panel recognized LTL's good intentions in filing its bankruptcy petition and LTL's financial means to effectuate its planned reorganization.  Op. 18, 55.  Those good intentions apply to LTL's certiorari petition, too.

1.  Allowing the mandate to take effect will create chaos in the Bankruptcy Court and across mass-tort proceedings nationwide if the Supreme Court reverses this Court.

The Bankruptcy Court has noted that upon the mandate issuing, it will dismiss the petition and retain jurisdiction over only administrative matters, like fees.  Dismissal of the bankruptcy brings with it dissolution of the TCC and discharge of its retained professionals, meaning claimants represented by the TCC would lack representatives to respond to LTL's petition for certiorari.  *See* 11 U.S.C. § 103(g); *In re Great N. Paper, Inc.*, 299 B.R. 1, 5 (D. Me. 2003) ("When the statutory basis of the case is changed, either through dismissal or . . . conversion, the statute under which the Committee was created no longer applies and the committee is automatically dissolved.") (quotation marks omitted). In addition, dismissal will result in the discharge of the Bankruptcy Court's retained professionals, such as the mediators, the fee examiner, and the future claims representative.  Then, if the Supreme Court reverses, the Bankruptcy Court would have to rewind all its efforts and rebuild the significant infrastructure that it had just dismantled.

Moreover, in the absence of a stay, there would be significant chaos and confusion across the mass-tort proceedings.  Approximately 1,000 individually set ovarian-cancer claims are pending in various state courts outside of the federal

MDL and consolidated state proceedings in California and New Jersey. That means there are roughly 1,000 ovarian-cancer claims that are not subject to deliberate and measured docket-wide coordination procedures, and each will require state court judges and their staff to expend resources to "on track" the cases back into the system. Moreover, an additional 470 mesothelioma claims are pending in state courts across the country, none of which are coordinated, and many of which are filed on specialized, asbestos-specific accelerated dockets. Each of these cases would suddenly spring back into activity and proceed towards trial absent a stay.

The mesothelioma docket alone makes the point. The currently pending mesothelioma claims would return to 44 different courts across 25 different States. Many of the cases have proceeded in the interim against other defendants and without LTL's involvement, but suddenly LTL would be thrown into the mix— potentially significantly impacting the progress, scope, and nature of the cases. Worse, there are at least 20 mesothelioma cases now on the eve of trial or which could be set for trial in the next 60 days, each of which would demand significant investment in expedited, catch-up discovery; expert-witness engagement; trial-lawyer time; and other resources.

In other words, the complex mass-tort machinery could swiftly spring to life in dozens upon dozens of courts across the country, requiring unexpected time and

resources from not just LTL but also court personnel, only to potentially grind to a halt (again)—possibly even in the middle of multiple trials—if the Supreme Court were to grant review.  And to be clear, this machinery does not run itself.  From just LTL's perspective, prior to the bankruptcy petition, 30 firms and 40 experts were retained to handle the mesothelioma cases referenced above.  Reconstituting this complex operation would be for naught if the Supreme Court decides to hear the case.  This Court can—and should—avoid this chaos by maintaining the status quo while LTL seeks certiorari.

2. LTL will also suffer irreparable harm absent a stay pending certiorari. *See Nara*, 494 F.3d at 1133 (an applicant can demonstrate good cause by showing "a likelihood of irreparable injury absent a stay.").  The purpose of LTL's bankruptcy petition was to channel into post-confirmation trusts all present and future asbestos-related tort claims against it, permitting compensation to be paid in a manner that ensures fair and equitable treatment of present and future claimants. As LTL explained in defending the automatic stay, its efforts to reorganize would be irreparably harmed if the mandate issues before final review of this case.  *See* Dkt. 104, LTL Response Br. 76-99.

Furthermore, if the mandate issues, LTL will be forced to resume litigation of the tens of thousands of stayed claims. *See supra* pp. 18-20.  Before bankruptcy, defense costs alone ran upwards of $10-20 million per month, A458, a

number that is sure to increase as the number of claims filed against LTL and its affiliates soars. *See Phillip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) ("If expenditures cannot be recouped, the resulting loss may be irreparable."). Claimants would not lose any rights during an approximately six-month stay, nor could they reasonably expect to start receiving payments if their lawsuits proceed in that same period. Although LTL will not become insolvent in the time it takes the Supreme Court to review this case, the sheer cost of restarting LTL's talc-litigation apparatus plus the monthly defense costs thereafter is sure to begin depleting the funds available for claimants with no offsetting benefits for anyone.

The harm to LTL and its ability to create a trust to benefit present and future claimants, if the Supreme Court reverses, also outweighs any harm the present claimants would suffer as a result of the stay. *See Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers) ("[I]n a close case, it may be appropriate to 'balance the equities'—to explore the relative harms to applicant and respondent, as well as the interests of the public at large."). Courts consistently recognize the public interest in a successful reorganization. *See, e.g.*, *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983). That is particularly so in the mass-tort context, where "completing the reorganization process . . . [will] resolv[e] thousands of claims in a uniform and equitable manner." *In re W.R. Grace & Co.*, 386 B.R. 17, 36 (Bankr. D. Del. 2008). And here, as the Bankruptcy

21

Court explicitly found, A29, and the panel did not dispute, Op. 54-55, a trust that is

ultimately established by a confirmed plan of reorganization for LTL would allow

for more efficient recoveries for claimants than generally are possible in the tort

system.  "Refusing a stay," at bottom, "may visit an irreversible harm on [LTL],

but granting it will apparently do no permanent injury to" Claimants.  *Philip*

*Morris*, 561 U.S. at 1305.

## CONCLUSION

For these reasons, the Court should stay the mandate pending the filing and

disposition of a petition for writ of certiorari.

Respectfully submitted,

/s/ Neal Kumar Katyal

| | |
|---|---|
| Gregory M. Gordon | Neal Kumar Katyal |
| Brad B. Erens | Sean Marotta |
| Dan B. Prieto | William E. Havemann |
| JONES DAY | Jo-Ann Tamila Sagar |
| 2727 North Harwood Street | Patrick C. Valencia |
| Dallas, Texas 75201 | HOGAN LOVELLS US LLP |
| (214) 220-3939 | 555 Thirteenth Street, N.W. |
| | Washington, D.C. 20004 |
| C. Kevin Marshall | (202) 637-5600 |
| David S. Torborg | neal.katyal@hoganlovells.com |
| JONES DAY | |
| 51 Louisiana Avenue, N.W. | |
| Washington, D.C. 20001 | |
| (202) 879-3939 | |
| | |
| March 22, 2023 | *Counsel for LTL Management LLC* |

# CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Local R. 28.3(d) and Local R. 46.1(e), I certify that I, Neal Kumar Katyal, am admitted as an attorney and counselor of the United States Court of Appeals for the Third Circuit.

/s/ Neal Kumar Katyal
NEAL KUMAR KATYAL
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
neal.katyal@hoganlovells.com

March 22, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify the following:

1. This petition complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,165 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This petition complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the petition has been prepared in Times New Roman 14-point font using Microsoft Word 2010.

/s/ Neal Kumar Katyal
NEAL KUMAR KATYAL
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
neal.katyal@hoganlovells.com

March 22, 2023

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on March 22, 2023. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Neal Kumar Katyal
NEAL KUMAR KATYAL
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
neal.katyal@hoganlovells.com

March 22, 2023