Nos. 22-2003, 22-2004, 22-2005, 22-2006, 22-2007,
22-2008, 22-2009, 22-2010, 22-2011 (Consolidated)

# United States Court of Appeals for the Third Circuit

IN RE LTL MANAGEMENT, LLC,

*Debtor.*

OFFICIAL COMMITTEE OF TALC CLAIMANTS, *et al.*,

*Petitioners-Appellants,*

v.

LTL MANAGEMENT, LLC,

*Debtor-Appellee.*

Direct Appeal from the United States Bankruptcy Court for the District of New
Jersey in Ch. 11 No. 21-30589 and Adv. Pro. No. 21-03032

## BRIEF OF THE OFFICIAL COMMITTEE OF TALC CLAIMANTS IN OPPOSITION TO MOTION TO STAY MANDATE

MOLOLAMKEN LLP
Jeffrey A. Lamken
600 New Hampshire Ave., N.W.
Washington, DC 20037
(202) 556-2010

GENOVA BURNS LLC
Angelo J. Genova
Daniel M. Stolz
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
(973) 533-0777

*Counsel for Appellant Official Committee of Talc Claimants*
(Additional Counsel Listed on Inside Cover)

BROWN RUDNICK LLP
David J. Molton
Michael S. Winograd
Robert J. Stark
7 Times Square
New York, NY 10036
(212) 209-4800

OTTERBOURG P.C.
Melanie L. Cyganowski
Adam C. Silverstein
230 Park Avenue
New York, NY 10169
(212) 661-9100

MASSEY & GAIL LLP
Jonathan S. Massey
1000 Maine Ave. S.W., Suite 450
Washington, DC 20024
(202) 652-4511

BAILEY & GLASSER LLP
Brian A. Glasser
1055 Thomas Jefferson St., N.W.
Washington, DC 20007
(202) 463-2101

PARKINS LEE & RUBIO LLP
Lenard M. Parkins
700 Milam St., Suite 1300
Houston, TX 77002
(713) 715-1666

*Counsel for Appellant Official Committee of Talc Claimants*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................3

I.    LTL Has Not Shown a Reasonable Probability That the Supreme
      Court Will Grant Certiorari and Reverse the Panel Decision ........................3

      A.    The Panel's Application of the Good-Faith Standard Implicates
            No Circuit Conflict................................................................4

      B.    The Panel's Application of the Standard of Review Does Not
            Merit Review......................................................................9

      C.    Reversal by the Supreme Court is Exceedingly Unlikely..................13

II.   LTL Faces No Risk of Irreparable Harm—But Such Harm Would
      Befall the Sick and Dying Respondents if a Stay Were Granted .................16

      A.    Resuming Trial Court Proceedings Halted by the Improperly
            Filed Bankruptcy Case Is Not Irreparable Harm, Much Less to
            LTL..............................................................................17

      B.    LTL Itself Faces No Risk of Irreparable Harm ...................................19

      C.    The Equities Overwhelmingly Favor Respondents ...........................21

CONCLUSION .......................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*In re 15375 Mem'l Corp. v. BEPCO, L.P.*,
589 F.3d 605 (3d Cir. 2009) ...............................................................10

*Am. United Mut. Life Ins. Co. v. City of Avon Park, Fla.*,
311 U.S. 138 (1940).............................................................................15

*Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*,
398 U.S. 281 (1970).............................................................................18

*Butner v. United States*,
440 U.S. 48 (1979)..........................................................................12, 13

*In re C-TC 9th Ave. P'ship*,
113 F.3d 1304 (2d Cir. 1997) ..............................................................14

*In Re Capitol Food Corp. of Fields Corner*,
490 F.3d 21 (1st Cir. 2007)....................................................................4

*Carolin Corp. v. Miller*,
886 F.2d 693 (4th Cir. 1989) .............................................5, 6, 13, 14

*In re Cedar Shore Resort, Inc.*,
235 F.3d 375 (8th Cir. 2000) ..........................................................4, 14

*Ex parte Christy*,
44 U.S. 292 (1845)...............................................................................15

*Matter of Cohoes Indus. Terminal, Inc.*,
931 F.2d 222 (2d Cir. 1991) ..................................................................4

*Commonwealth Oil Refining Co. v. Lummus Co.*,
82 S. Ct. 348 (1961).............................................................................17

*In re Cook*,
104 F.2d 981 (7th Cir. 1939) .................................................................4

*In re Coastal Cable T.V., Inc.*,
    709 F.2d 762 (1st Cir. 1983) ................................................................. 14

*FTC v. Standard Oil Co. of. Cal.*,
    449 U.S. 232 (1980) ............................................................................. 20

*Gold v. Johns-Manville Sales Corp.*,
    723 F.2d 1068 (3d Cir. 1983) ............................................................... 21

*Iannini v. Winnecour*,
    487 B.R. 434 (W.D. Pa. 2012) ............................................................. 19

*In re James Wilson Assocs.*,
    965 F.2d 160 (7th Cir. 1992) ............................................................... 14

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ............................................................................. 18

*In re Little Creek Dev. Co.*,
    779 F.2d 1068 (5th Cir. 1986) ......................................................... 13, 15

*In re Lyons Transp. Lines, Inc.*,
    162 B.R. 460 (Bankr. W.D. Pa. 1994) ................................................ 19

*Manhattan Props. v. Irving Tr. Co.*,
    291 U.S. 320 (1934) ............................................................................. 14

*In re Marsch*,
    36 F.3d 825 (9th Cir. 1994) ............................................................... 5, 14

*Maynard v. Elliott*,
    283 U.S. 273 (1931) ............................................................................. 14

*Merrill v. Milligan*,
    149 S. Ct. 879 (2022) ....................................................................... 16, 17

*Nara v. Frank*,
    494 F.3d 1132 (3d Cir. 2007) ............................................................ 3, 17

*Olah v. S.S. Jaladurga*,
    343 F.2d 457 (4th Cir. 1965) ............................................................... 11

*Philip Morris USA, Inc. v. Scott*,
   561 U.S. 1301 (2010) .........................................................................20

*In re Phoenix Piccadilly, Ltd.*,
   849 F.2d 1393 (11th Cir. 1988) ........................................................14

*In re Premier Auto. Servs., Inc.*,
   492 F.3d 274 (4th Cir. 2007) ........................................................4, 5, 6

*Pullman-Standard v. Swint*,
   456 U.S. 273 (1982).........................................................................13

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
   415 U.S. 1 (1974).........................................................................2, 20

*Rostker v. Goldberg*,
   448 U.S. 1306 (1980).....................................................................3, 21

*In re SGL Carbon Corp.*,
   200 F.3d 154 (3d Cir. 1999) ....................................................6, 15, 16

*In re Stewart*,
   175 F.3d 796 (10th Cir. 1999) .............................................................5

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
   572 U.S. 1301 (2014)..................................................................3, 4, 13

*In re Thorpe Insulation Co.*,
   671 F.3d 1011 (9th Cir. 2012) .............................................................9

*Toibb v. Radoff*,
   501 U.S. 157 (1991)..........................................................................15

*In re Trident Assocs. Ltd. P'ship*,
   52 F.3d 127 (6th Cir. 1995) ...............................................................14

*Twentieth Century Airlines v. Ryan*,
   74 S. Ct. 8 (1953)..............................................................................17

*United States v. Mendoza*,
   464 U.S. 154 (1984)............................................................................8

*United States v. U.S. Gypsum Co.*,
   333 U.S. 364 (1948) ................................................................ 11

*United States v. Williams*,
   504 U.S. 36 (1992) .................................................................... 9

*United Steelworkers of Am. v. Fort Pitt Steel Casting*,
   598 F.2d 1273 (3d Cir. 1979) ................................................ 21

*Universal Minerals, Inc. v. C.A. Hughes & Co.*,
   669 F.2d 98 (3d Cir. 1981) ............................................... 10, 11

*Vendo Co. v. Lektro-Vend Corp.*,
   433 U.S. 623 (1977) ............................................................... 18

*In re Waldron*,
   785 F.2d 936 (11th Cir. 1986) ................................................. 5

*Williams v. U.S. Fidelity & Guaranty Co.*,
   236 U.S. 549 (1915) ................................................................. 4

*In re Winshall Settlor's Tr.*,
   758 F.2d 1136 (6th Cir. 1985) ............................................... 14

*In re Winslow*,
   949 F.2d 401 (10th Cir. 1991) ............................................... 14

## STATUTES AND RULES

11 U.S.C. § 524(g) ................................................................. 8, 9

11 U.S.C. § 1112(b) ................................................... 13, 14, 15, 16

11 U.S.C. § 1112(b)(1) ............................................................ 14

28 U.S.C. § 2283 .................................................................... 18

Sup. Ct. R. 10 ..................................................................... 7, 11

## LEGISLATIVE MATERIALS

H.R. Rep. No. 95-595 (1977) ................................................... 15

H.R. Rep. 103-835 (1994)....................................................................9

Pub. L. 103-394, 108 Stat. 4127 (1994)................................................14

Pub. L. 109-8, 119 Stat. 115 (2005)......................................................14

Pub. L. 111-327, 124 Stat. 3561 (2010)................................................14

## OTHER AUTHORITIES

7 Collier on Bankruptcy.......................................................................15

R. Klonoff, *Federal Multidistrict Litigation in a Nutshell* (2020) .........................18

9A C. Wright & A. Miller, *Federal Practice & Procedure* ..............................11, 13

# **INTRODUCTION**

LTL does not meet the demanding standard for the extraordinary relief of staying the mandate—relief available only if the movant shows a reasonable likelihood of Supreme Court review, a reasonable likelihood of prevailing in the Supreme Court, and irreparable harm absent a stay.  This Court's decision holds only that bankruptcy's special protections and procedures are not available to LTL, a debtor with the wherewithal to "meet comfortably its liabilities as they came due for the foreseeable future."  Op. 53.  That fact-bound ruling is an unlikely candidate for further review and an even more unlikely candidate for reversal in the unlikely event review were granted.  And the issue of irreparable harm weighs dispositively against a stay.

LTL concedes that "lack of financial distress 'alone'" justifies dismissal of a Chapter 11 case under *every* formulation of good faith it purports to identify.  Mot. 6.  According to LTL, the evidence here shows financial distress.  But the Supreme Court does not grant review to second-guess the application of settled law to specific facts.  Nor would this case come out any differently under any other circuit's standard.  This Court held that the bankruptcy court's good-faith analysis rested on clearly erroneous fact-findings.  That would require reversal under every circuit's standard.  There is little chance that the Supreme Court will grant review of LTL's petition, and even less chance that five Justices would vote to reverse.

1

Turning to irreparable harm, LTL warns of "chaos" if the mandate issues. But resumption of proceedings stayed by LTL's bad-faith bankruptcy filing is not chaos. It returns jurisdiction to the MDL court and state courts, removing an erroneous and improper impediment to their authority. Those proceedings were underway when LTL filed its petition; restarting them would impose no new burdens on the courts. Nor can litigation expenses LTL will incur once the mandate issues establish irreparable harm. *See, e.g.*, *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974).

Compare that to the harm to sick-and-dying claimants from *granting* a stay. For 18 months, LTL's improper bankruptcy has frozen the cases of tens of thousands of talc victims, barring them from pursuing (much less obtaining) compensation for their injuries and support for medical expenses. In just the first nine months of LTL's bankruptcy, over 300 talc claimants died—more than one a day—without getting their day in court. App. 3775. LTL acknowledges that dozens of cases involving grievously ill plaintiffs are nearing trial. Mot. 19. Nonetheless, it asks this Court to freeze those trials for what it estimates will be seven more months, until the Supreme Court rules on its certiorari petition. For so many talc victims, that further delay translates into death before getting a day in court or even a chance to settle out of court. Talc victims have waited long enough. The balance of equities cuts sharply

2

against locking them out of court for still longer to spare LTL litigation expenses while it prepares a doomed petition for a writ of certiorari.

## ARGUMENT

A stay of the court of appeals' mandate pending a petition for writ of certiorari is "extraordinary relief," *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 572 U.S. 1301, 1301 (2014) (Roberts, C.J., in chambers), reserved for "exceptional cases," *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007). The required showing is demanding. The "movant" must "show: (1) a reasonable probability that the Supreme Court will grant certiorari; (2) a reasonable possibility that at least five Justices would vote to reverse this Court's judgment; and (3) a likelihood of irreparable injury absent a stay." *Id.* (citing *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980)). "In a close case, the movant should make a showing that, on balance, the interests of the parties and the public favor a stay." *Id.* LTL comes nowhere close to meeting any of those requirements, much less all of them. Instead, each points dispositively against granting a stay.

## I.    LTL HAS NOT SHOWN A REASONABLE PROBABILITY THAT THE SUPREME COURT WILL GRANT CERTIORARI AND REVERSE THE PANEL DECISION

Attempting to establish a probability of Supreme Court review, LTL argues that this Court's decision implicates circuit "split[s] regarding the content of the good-faith standard" and the "standard of review applicable to a bankruptcy court's good-faith analysis." Mot. 3-4. Both putative conflicts are fictional. Neither is

3

likely to garner Supreme Court review, much less five votes for reversal.  *See Teva*, 572 U.S. at 1301.

### A.    The Panel's Application of the Good-Faith Standard Implicates No Circuit Conflict

1.    LTL begins by arguing that the Supreme Court may grant review to resolve a supposed conflict over whether the test for good faith turns on evidence of subjective bad faith, objective bad faith, objective futility, or some combination. Mot. 4-5.  But LTL concedes that, when the debtor lacks financial distress, that can " 'overlap[ ]' with and satisf[y]" both "subjective bad faith *and* objective futility," as well as this Court's objective approach.  *Id.* at 6.  Thus, "lack of financial distress 'alone' " may compel dismissal under *each* of those supposedly conflicting tests.  *Id.* LTL's lack of financial distress would be fatal under *any* standard LTL identifies.

The circuits are unanimous that bankruptcy is for "honest debtor[s]" suffering "from the weight of oppressive indebtedness," *Williams v. U.S. Fidelity & Guaranty Co.*, 236 U.S. 549, 554 (1915), not forum shoppers eager to enjoy bankruptcy's benefits.  *See, e.g.*, *In re Capitol Food Corp. of Fields Corner*, 490 F.3d 21, 25 (1st Cir. 2007) (must have " 'some type of financial distress' "); *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 228 (2d Cir. 1991) (must have "financial difficulty"); *In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 280 (4th Cir. 2007) (clear "solvency" disqualifying); *In re Cook*, 104 F.2d 981, 985 (7th Cir. 1939) (dismissing because "there was no insolvency"); *In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 380 (8th

Cir. 2000) (debtor "not in dire financial straits" ineligible); *In re Marsch*, 36 F.3d 825, 829 (9th Cir. 1994) (dismissing where "debtor had the financial means to pay"); *In re Stewart*, 175 F.3d 796, 809 (10th Cir. 1999) ("inability to pay" key factor in evaluating "abuse" of bankruptcy); *In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986) (opening bankruptcy to "financially secure" debtors would be a "travesty").

Here, LTL was adamant that it had no "'imminent or even likely need'" to draw on the $61.5 billion funding agreement—functionally an "ATM" at its disposal to pay talc claims. Op. 53. The panel could thus take LTL "at [its] word" that LTL could "meet comfortably its liabilities as they came due for the foreseeable future." *Id*. LTL's motion fails to identify a *single decision* suggesting that another court would permit a debtor that was flush with resources, like LTL was here, to claim protection in bankruptcy. That makes certiorari highly unlikely even if LTL could point to "variations" among the circuits' "formulations" of the good-faith standard. S. Shapiro et al., Supreme Court Practice 480 (10th ed. 2013).

The Fourth Circuit, on which LTL focuses, is no exception. Mot. 5-6. As LTL acknowledges, lack of financial distress "*alone* may justify dismissal of [its] Chapter 11 petition" in the Fourth Circuit, just as it does here. *Premier Auto*, 492 F.3d at 280 (emphasis added); *see Carolin Corp. v. Miller*, 886 F.2d 693, 701, 704-05 (4th Cir. 1989) (dismissing petition). Quoting this Court, *Premier Auto* explained that courts "'have consistently dismissed Chapter 11 petitions filed by financially

healthy companies.'"  492 F.3d at 280 (quoting *In re SGL Carbon Corp.*, 200 F.3d 154, 166 (3d Cir. 1999)).  LTL resorts to distinguishing *Premier Auto* as resting on the absence of unsecured creditors.  Mot. 6.  But that was simply one reason of many that the debtor in *Premier Auto* was "'financially healthy'" and thus ineligible for bankruptcy.  492 F.3d at 280.  That LTL is financially healthy for different reasons—61.5 billion of them—is no basis for Supreme Court review.

Even if LTL's extreme solvency did not by itself establish subjective bad faith and objective futility of reorganization—notwithstanding *Premier Auto*'s clarity—both requirements are satisfied on the record here.  LTL *knew* it had ample resources to satisfy its obligations—it said so, and the panel took LTL "at [its] word."  Op. 53.  It is not a financially distressed debtor eligible for bankruptcy.[1]  And LTL is a shell, with no business and operations.  Op. 54.  Because LTL has "no going concern to preserve," its bankruptcy petition lacked any "'relation to the statutory objective of resuscitating a financially troubled debtor.'"  *Carolin*, 886 F.2d at 701.  LTL fails even its view of the Fourth Circuit's standard.

This Court never "conceded" LTL would prevail in the Fourth Circuit.  Mot. 5 (citing Op. 30 n.8).  And LTL's reliance on the bankruptcy court's comment that

---

[1] While this Court acknowledged LTL may have had a "sincerely held" "belief" that bankruptcy would be fair to everyone, Op. 57, LTL fails to explain how that qualifies as a "good faith" belief that it has the sort of financial distress that qualifies it *for bankruptcy*, Mot. 5.

LTL would prevail in the Fourth Circuit, *id.*, only confirms that LTL's putative question is hopelessly fact-bound. The bankruptcy court also found that LTL satisfied *this Circuit*'s standard. After carefully reviewing the record, this Court found that the bankruptcy court's conclusion rested on fundamentally flawed premises—"casual[ly]" overstating LTL's projected liabilities and ignoring the $61.5 billion "ATM" at LTL's disposal to meet them. Op. 47-55. The Supreme Court would have to examine the record itself and disagree with the panel's assessment before it could even reach LTL's putative question. "The Supreme Court does not ordinarily grant review in such 'fact bound' cases." Shapiro, *supra*, at 507 (citing Sup. Ct. R. 10).

2.    LTL's appeals to "importance" are unavailing. This Court's narrow decision carefully confines its holding to the "special circumstances here" without suggesting that "the presence of these characteristics would preclude a finding of financial distress in every case." Op. 54 n.17. The decision does not foreclose innovation or pass judgment on divisional mergers generally. *Id.* at 58. And it confirms that "in the right circumstances," mass-tort debtors can avail themselves of Chapter 11. Op. 39; *contra* Mot. 9.

The fact that other courts are considering questions that overlap with those in this case makes review of the decision less likely still. This Court is the first court of appeals to consider a challenge to a bankruptcy proceeding involving a flush, nontraditional debtor seeking to dispose of mass-tort liabilities in bankruptcy. As

the Supreme Court has recognized, "freezing the first final decision rendered on a particular legal issue" can "substantially thwart the development of important questions of law." *United States v. Mendoza*, 464 U.S. 154, 160 (1984). Even if one assumed the existence of an otherwise cert-worthy issue—and there is none—the existence of proceedings in other courts makes the vanishingly small potential for further review smaller still, as the Supreme Court follows its traditional wait-and-see approach of "permitting several courts of appeals to explore a difficult question before [it] grants certiorari." *Id.*

LTL warns that the panel's decision threatens other debtors "in LTL's shoes," "buckling under the weight of similar suits," and "neglects the interests of future claimants." Mot. 8, 9. But LTL lost precisely because it was nowhere near "buckling." There was no "sign on the horizon it would be anything but successful" in addressing talc liabilities. Op. 54. The only similarly situated debtors are ones that, like LTL, can readily afford to compensate their victims outside bankruptcy.

LTL gestures towards 11 U.S.C. § 524(g), Mot. 9, 12, but does not argue that its petition will present any question regarding that provision's interpretation. Nor is the panel decision in "tension" with § 524(g)'s purpose. Mot. 9. Congress enacted § 524(g) as a *remedy* for debtors "'facing . . . overwhelming liability'" for asbestos claims. *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1022 (9th Cir. 2012) (quoting H.R. Rep. 103-835, at 46-48 (1994)). It modeled § 524(g) on "the [Johns] Manville

case," H.R. Rep. 103-835, at 40-41, where (unlike here) the debtor faced true financial distress, including "'forced liquidation of key business segments,'" Op. 43.

Regardless, this case is a poor vehicle for addressing § 524(g). LTL's merits brief refused to address whether it was "[]eligible" to invoke § 524(g), deeming the issue "premature." LTL.Br. 71 n.4. And this Court did not reach the issue. The Supreme Court ordinarily will not review questions "'not pressed or passed upon below.'" *United States v. Williams*, 504 U.S. 36, 41 (1992).

## B. The Panel's Application of the Standard of Review Does Not Merit Review

LTL's challenge to the standard of review is also an unlikely candidate for Supreme Court review. Mot. 13-17. While this Court correctly recited circuit law holding that the *ultimate* good-faith and financial-distress determinations are legal conclusions, that standard was immaterial to the outcome here, which turned on this Court's *clear-error* review of the bankruptcy court's *underlying factual findings*. There is no circuit split as to that standard. LTL, moreover, does not even attempt to show that this question is important, recurring, or otherwise worthy of the Supreme Court's attention. That is further reason to expect its petition to be denied.

1. As LTL acknowledged, this Circuit follows Supreme Court precedent in reviewing "'findings of fact' underlying a holding of good faith" for "'clear error.'" LTL.Pet. 12 (quoting *In re 15375 Mem'l Corp. v. BEPCO, L.P.*, 589 F.3d 605, 616 (3d Cir. 2009)). The decision in this case reiterates that the "findings of

fact leading to the" conclusion of good faith are "review[ed] for clear error." Op. 34-35 (citing *BEPCO*, 589 F.3d at 616). And this Court treated the bankruptcy court's "calculations" and "projections of . . . pending and future liabilities" as "findings of fact" subject to clear-error review. Op. 35, 51 (citing *Universal Mins., Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir. 1981) (holding that "inferences" drawn from evidence are reviewed under "the 'clearly erroneous' standard")).

LTL did not prevail because those underlying factual findings were clearly erroneous—not because of some purported application of a *de novo* standard. This Court set aside the bankruptcy court's "projections" of defense costs and liabilities because those projections "ignore[d]" the "possibility of meaningful settlement" and implausibly assumed *every case* "would go to and succeed at trial." Op. 50-51. The bankruptcy court fundamentally erred in assuming that *Ingham*-like judgments were "the new norm" and that "*all* hope of a meaningful . . . settlement was lost." Op. 51 (emphasis added). LTL faults this Court for supposedly overlooking the bankruptcy court's discussion of the "'6,800 cases'" J&J "'settled'" and its victories "'in most of the talc cases it tried.'" Mot. 15-16 (quoting App. 24; App. 26 n.15). But the bankruptcy court considered that evidence only to *disregard it* in favor of logic-straining assumptions. Op. 50-51. The bankruptcy court's forecasts thus were not "inferences permissibly drawn" from the record that could survive even clear-error review. *Id.* (citing *Universal Mins.*, 669 F.2d at 102). None of those determina-

tions—and nothing this Court did—implicates a split of authority on the relevant standard. Insofar as LTL contends that the panel "misappli[ed]" that "properly stated rule of law," that does not warrant Supreme Court review. Sup. Ct. R. 10.[2]

LTL insists that the panel *must have* "reweigh[ed] the facts" under a *de novo* standard, because otherwise it could not have reached a "different conclusion than the bankruptcy court." Mot. 15. Even under clear-error review, an appellate court must review all the "evidence," and may set aside a finding if it is "left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see* 9A C. Wright & A. Miller, *Federal Practice & Procedure* § 2585. Courts thus may set aside findings that lack "adequate evidentiary support" or are "against the clear weight of the evidence." *Wright & Miller*, *supra*, § 2585. And courts can scrutinize "inferences drawn by the bankruptcy court" and set them aside if they are not "reasonable." *Universal Mins.*, 669 F.2d at 105; *see Olah v. S.S. Jaladurga*, 343 F.2d 457, 459 (4th Cir. 1965) (setting aside, under clear-error review, "factual inferences" which were not "reasonably deducible from the underlying facts"). Precisely that happened here.

---

[2] The Court did not set aside the bankruptcy court's "reasonabl[e] conclu[sion]" that "recent events," such as the Supreme Court denying review of *Ingham*, changed the calculus. Mot. 16. It simply rejected as implausible the assumption that, going forward, no cases would settle, and every case would be tried to verdict. Op. 50-51.

2.    Nor is the Supreme Court likely to review this Court's ruling that LTL, not Old JJCI, "was the proper focus of the financial-distress analysis."  Mot. 13. Neither LTL's brief nor its petition for rehearing argued that the determination as to which entity is the "proper focus" of the financial-distress test is a fact-finding subject to clear-error review.  LTL's failure to raise that argument before now speaks volumes about the issue's lack of importance.

There is no split of authority on the issue.  This Court applied Supreme Court precedent requiring courts to "respect the separateness of legal entities (and their respective assets and liabilities)" under state law.  Op. 46 (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)).  It observed that the Texas-law restructuring J&J had undertaken "creat[ed] . . . a new entity with a unique set of assets and liabilities" (LTL), and "eliminat[ed] . . . another" (Old JJCI).  The bankruptcy court's focus on Old JJCI was therefore "legal error," because it improperly "look[ed] past [the] effect" of those Texas-law transactions and the deliberate effort to ring-fence LTL's liabilities from those of affiliates.  Op. 46, 50.

LTL points to no authority suggesting that any other circuit would analyze the issue differently.  LTL cites cases from the Fourth, Fifth, and Sixth Circuits holding that, *in general*, bankruptcy-court good-faith findings are reviewed for clear error. Mot. 14.  But it is axiomatic that findings based upon "'an erroneous view of controlling legal principles'" receive no deference.  *Pullman-Standard v. Swint*, 456 U.S.

12

273, 285 (1982); *see* Wright & Miller, *supra*, § 2585.  LTL identifies no court that would have deferred to a bankruptcy court's failure to properly apply *Butner*.

## C.    Reversal by the Supreme Court is Exceedingly Unlikely

LTL also fails to show a "'fair prospect' that the [Supreme] Court will reverse the decision." *Teva*, 572 U.S. at 1301; Mot. 10-13.  LTL begins not by addressing the supposedly conflicting formulations of good faith, but by attacking the good-faith requirement *itself* as a "judicially created gloss" that the Supreme Court is "likely to view with skepticism." Mot. 10.  The Supreme Court is unlikely to overturn the uniform view of the lower courts that lack of good faith constitutes "cause" for dismissal under 11 U.S.C. § 1112(b).  LTL offers no argument for jettisoning the financial-distress requirement that does not also require jettisoning the good-faith requirement entirely.

"Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings." *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986).  The courts of appeals "presented with the question have *uniformly* held that" the absence of "'good faith' . . . may constitute cause for dismiss-

al." *Carolin*, 886 F.2d at 698 (emphasis added).[3] LTL fails to identify a *single decision*, by any court, rejecting the good-faith requirement.

That uniform agreement carries special weight where, as here, Congress has repeatedly amended § 1112 without disturbing it. *See* Pub. L. 111-327, 124 Stat. 3561 (2010); Pub. L. 109-8, 119 Stat. 115 (2005); Pub. L. 103-394, 108 Stat. 4127 (1994). Where a "unanimous" "body of decisions" has interpreted a provision of the bankruptcy statute, and Congress has repeatedly amended the statute "without alter[ing]" that construction, that is "persuasive" evidence that "the construction adopted by the courts has been acceptable to the legislative arm of the government." *Manhattan Props., Inc. v. Irving Tr. Co.*, 291 U.S. 320, 336 (1934). Under such circumstances, "'only compelling language in the statute itself would warrant the rejection of a construction so long and so generally accepted.'" *Id.* (quoting *Maynard v. Elliott*, 283 U.S. 273, 277 (1931)).

LTL's contention that the statutory text does not support a good-faith requirement is far from "compelling." Section 1112(b) authorizes bankruptcy courts to dismiss petitions "for cause." 11 U.S.C. § 1112(b)(1). As this Court explained in

---

[3] *See In re Coastal Cable T.V., Inc.*, 709 F.2d 762, 764 (1st Cir. 1983); *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997); *Carolin*, 886 F.2d at 698; *Little Creek*, 779 F.2d at 1701; *In re Winshall Settlor's Tr.*, 758 F.2d 1136, 1137 (6th Cir. 1985); *In re James Wilson Assocs.*, 965 F.2d 160, 170 (7th Cir. 1992); *Cedar Shore*, 235 F.3d at 379; *Marsch*, 36 F.3d at 830; *In re Winslow*, 949 F.2d 401 (10th Cir. 1991); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988).

14

*SGL*, the grounds listed in §§ 1112(b)(4)(A)-(P) are by their terms "not exhaustive" and courts may dismiss for other grounds that "qualify as 'cause.'" 200 F.3d at 160. The legislative history confirms that courts have "wide discretion" under § 1112(b) and can "use [their] equitable powers to reach an appropriate result in individual cases." H.R. Rep. No. 95-595, at 405-06 (1977); *see SGL*, 200 F.3d at 160.

That is critical, given the "equitable nature of bankruptcy." *SGL*, 200 F.3d at 161-62; *see Ex parte Christy*, 44 U.S. 292, 313 (1845). Courts have uniformly found the good-faith inquiry to be a proper exercise of their authority—under the good-cause standard—to "'grant or deny relief'" according to equitable principles to "prevent[] abuse of the bankruptcy process" and "protect[] [their] jurisdictional integrity." *Little Creek*, 779 F.2d at 1072 (quoting *Am. United Mut. Life Ins. Co. v. City of Avon Park, Fla.*, 311 U.S. 138, 161 (1940)); *see SGL*, 200 F.3d at 161-62; 7 Collier on Bankruptcy § 1112.07 (16th ed. 2009).

*Toibb v. Radoff*, 501 U.S. 157 (1991), Mot. 12, is inapposite. That case held that courts could not impose an "ongoing business" requirement on Chapter 11 filings, where the statute plainly made that provision available to any "person." *Id.* at 160-61. *Toibb* has no bearing on this case, where the statutory text itself authorizes bankruptcy courts to dismiss petitions "for cause"—and where the requirement of financial distress is inherent in the very concept of bankruptcy. *Toibb* likewise

did not implicate the bankruptcy court's equitable powers to protect against abuse of the bankruptcy process and the integrity of its own jurisdiction.

LTL's assertion that requiring financial distress falls outside of § 1112(b)'s "goal of preventing abuse of the bankruptcy process" is risible.  Mot. 10.  What could possibly be more abusive of the bankruptcy process than a "highly solvent" company "with access to cash to meet comfortably its liabilities as they came due for the foreseeable future," Op. 53, filing for bankruptcy to halt lawsuits brought by dying victims of its cancer-causing products?  While this Court did not reach the issue, it correctly observed that a bankruptcy filing "where there is no financial distress raises . . . the specter of 'abuse which must be guarded against to protect the integrity of the bankruptcy system.'"  Op. 55 n.18 (quoting *SGL*, 200 F.3d at 169).

## II.   LTL FACES NO RISK OF IRREPARABLE HARM—BUT SUCH HARM WOULD BEFALL THE SICK AND DYING RESPONDENTS IF A STAY WERE GRANTED

A stay of the mandate requires demonstrating "that *the applicant* would likely suffer irreparable harm absent the stay."  *Merrill v. Milligan*, 149 S. Ct. 879, 880 (2022) (Mem.) (Kavanaugh, J., concurring in grant of applications for stays) (emphasis added).  LTL utterly fails to establish it would suffer such harm here.  The proposed stay would, however, impose irreparable harm on the many claimants who are dying while their cases are frozen as a result of an improper bankruptcy.

**A.    Resuming Trial Court Proceedings Halted by the Improperly Filed Bankruptcy Case Is Not Irreparable Harm, Much Less to LTL**

Effectively conceding that it will suffer no harm, LTL begins by invoking supposedly irreparable harms to the judicial system and its opponent—the TCC. "[C]ourts across the country will be thrust into chaos," it says, and dismissal will cause "dissolution of the TCC, . . . meaning claimants represented by the TCC would lack representatives to respond to LTL's petition for certiorari." Mot. 17-18. But the application must show that "*the applicant* would likely suffer irreparable harm." *Merrill*, 149 S. Ct. at 880 (emphasis added). LTL cannot invoke the rights of others. And LTL's prophecies of doom for courts and the TCC are unsupported.

1.    The Supreme Court has repeatedly rejected the notion that resuming proceedings is irreparable harm. *See Commonwealth Oil Refining Co. v. Lummus Co.*, 82 S. Ct. 348, 349 (1961) (denying stay where issuance of the mandate would "set in motion the machinery for arbitration" proceedings); *Twentieth Century Airlines v. Ryan*, 74 S. Ct. 8, 11 (1953) (denying stay because administrative "proceedings themselves" are not "irreparable injury"); *see Nara*, 494 F.3d at 1133 (denying stay because "commence[ment] of trial within 120 days" is not "irreparable injury"). Here, trial court proceedings across the country were interrupted for more than a year by LTL's improper bankruptcy petition. Denying the stay would merely restore to all those courts the authority that was wrongly wrested from them, restarting progress that was halted, for the past 18 months.

With their authority restored, each court would have inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Returning jurisdiction to the MDL Court, in particular, would empower that court to continue coordinating proceedings in over 38,000 talc cases. Even for those cases not proceeding to trial, the MDL Court could direct settlement negotiations to resume in the meantime. *See* R. Klonoff, *Federal Multidistrict Litigation in a Nutshell* 243 (2020) ("[Ninety-seven] percent of all MDLs are resolved . . . either by settlement or other disposition."). Restoring to trial courts the authority that was improperly taken away from them for so long is not injury but its opposite.

That is particularly true for the numerous state cases LTL relies upon. Mot. 18-19. Federal stays of state-court litigation are strongly disfavored. The bankruptcy stay is a narrow exception to the otherwise "absolute prohibition against any injunction of any state-court proceedings." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977); *see* 28 U.S.C. § 2283. That prohibition reflects the "fundamental principle of a dual system of courts" and respect for the sovereign authority of the states and their courts. *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 285-86, 297 (1970). That principle of respecting state-court autonomy weighs strongly in favor of returning jurisdiction to them to exercise as they see fit, not further extending federal "intervention." *Id.* at 286-87.

Finally, LTL feigns concern for the TCC in the event the bankruptcy case is dismissed.  Mot. 18.  That concern is not LTL's to raise.  And the bankruptcy court has authority under § 105(a), as well as § 349(b), to retain administrative jurisdiction over the case and maintain the TCC for the limited purpose of representing talc claimants in opposing certiorari.  *See, e.g.*, *In re Lyons Transp. Lines, Inc.*, 162 B.R. 460, 461 (Bankr. W.D. Pa. 1994); *Iannini v. Winnecour*, 487 B.R. 434, 439 (W.D. Pa. 2012).  *In re Great Northern Paper, Inc*., 299 B.R. 1 (D. Me. 2003), Mot. 18, is distinguishable because, among other things, it involved conversion of a Chapter 11 case to Chapter 7, where a Chapter 7 trustee is appointed to safeguard the interests of all creditors.

### B.    LTL Itself Faces No Risk of Irreparable Harm

Making only a desultory effort to show harm to itself, LTL asserts that "its efforts to reorganize [will] be irreparably harmed," Mot. 20, but never explains how. It cryptically cites a portion of its response brief, Mot. 20 (citing LTL.Br. 76-99), addressing the "Stayed Tort Claims Against ***LTL's Nondebtor Affiliates, Insurers, and Third-Party Retailers***," LTL.Br. 76 (emphasis added).  Even that discussion is about third parties.  The lack of harm to LTL should be unsurprising.  As the panel observed, LTL is a "shell company" with no operating business and "a lack of mean-ingful operations" that could be disrupted by talc litigation.  Op. 54 & n.17.  It thus has no "need to reorganize." *Id.*  For the same reason, it cannot suffer irreparable

19

harm from denial of a stay.  Outside of bankruptcy, LTL will be able to draw on the $61.5 billion funding agreement to pay talc claims in the ordinary course.

LTL points to "defense costs."  Mot. 20-21.  But "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."  *Renegotiation*, 415 U.S. at 24; *see FTC v. Standard Oil Co. of. Cal.*, 449 U.S. 232, 244 (1980).  *Philip Morris USA, Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers), is inapposite.  There, the "*judgment* requir[ed] applicants to" fund a "smoking cessation program" and applicants could not recoup those sums if they prevailed in their challenge to that judgment.  *Id.* at 1301, 1304 (emphasis added).  *Philip Morris* did not disturb the longstanding rule that even unrecoupable litigation costs do not constitute irreparable injury.[4]

Finally, any harm to LTL's "ability to create a trust to benefit present and future claimants" is not a harm *to LTL*.  Mot. 21.  And it is illusory.  LTL's argument assumes that its talc liabilities exceed its ability to pay—such that any defense costs will reduce sums available to claimants.  But this Court soundly rejected that assumption.  Op. 53.

---

[4] *Philip Morris* would not apply to judgments LTL must pay while its petition is pending, because its petition does not challenge those judgments.  LTL does not argue such sums constitute irreparable injury.

## C.     The Equities Overwhelmingly Favor Respondents

The "relative harms to . . . respondent" from a stay, *Rostker*, 448 U.S. at 1308, is yet another reason to deny LTL's motion. Those harms vastly outweigh any possible harm to LTL. In *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir. 1983), this Court declined to stay actions against Johns Manville's co-defendants, citing the "hardship" to victims from "being forced to wait for an indefinite and . . . lengthy time before their causes are heard," while "plaintiffs and crucial witnesses are dying, often from the very diseases" that led to that litigation.

The same reasoning applies here. Many talc claimants have died, and many others are dying. TCC.Br. 60. Numerous talc victims are uninsured or underinsured, and confront uncompensated and ever-increasing medical costs as they work to treat their conditions and extend their time left with their loved ones. *See* App. 1778, 2997. Delay in their ability to pursue compensation and support for medical expenses is " 'substantial and irreparable injury.' " *United Steelworkers of Am. v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d Cir. 1979).

It is precisely because many claimants have so little time left that, as LTL concedes, dozens of cases are "on the eve of trial" or "could be set for trial in the next 60 days." Mot. 19. Countless more could reach settlements in that timeframe. LTL's proposed stay would shut down the prospect of that relief as the progressive disease, caused by J&J's products, kills still more claimants with each passing day.

21

## **CONCLUSION**

LTL's motion to stay the mandate should be denied.


March 28, 2023

MOLOLAMKEN LLP
Jeffrey A. Lamken
600 New Hampshire Ave., N.W.
Washington, DC 20037
(202) 556-2010


BROWN RUDNICK LLP
David J. Molton
Michael S. Winograd
Robert J. Stark
7 Times Square
New York, NY 10036
(212) 209-4800


MASSEY & GAIL LLP
Jonathan S. Massey
1000 Maine Ave., S.W., Suite 450
Washington, DC 20024
(202) 652-4511


PARKINS LEE & RUBIO LLP
Lenard M. Parkins
700 Milam St., Suite 1300
Houston, TX 77002
(713) 715-1666

Respectfully submitted,
*/s/ Angelo J. Genova*
GENOVA BURNS LLC
Angelo J. Genova
Daniel M. Stolz
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
(973) 533-0777


OTTERBOURG P.C.
Melanie L. Cyganowski
Adam C. Silverstein
230 Park Avenue
New York, NY 10169
(212) 661-9100


BAILEY & GLASSER LLP
Brian A. Glasser
1055 Thomas Jefferson St., N.W.
Washington, DC 20007
(202) 463-2101


*Counsel for Appellant Official Committee of Talc Claimants*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this brief contains 5,164 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

This brief complies with the electronic filing requirements of Third Circuit Local Rule 31.1(c) because the text of the electronic brief is identical to the text in the paper copies, and a virus detection program has been run on this file and no virus was detected.  The virus detection program utilized was Vipre Virus Protection, version 3.1.


March 28, 2023                          */s/ Angelo J. Genova*

                                        Angelo J. Genova

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I certify that today, March 28, 2023, I electronically filed the foregoing Brief in Opposition to Stay of the Mandate with the Clerk of the Court for the U.S. Court of Appeals for the Third Circuit using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


March 28, 2023                    */s/ Angelo J. Genova*
                                  Angelo J. Genova